UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN MCGHEE,

        Petitioner,

                                    Case No: 14-cv-14564
v.                                  Honorable Linda V. Parker


DUNCAN MACLAREN,

        Respondent.
_____

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF
<u>APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*</u>**

       Bryan McGhee, ("Petitioner"), confined at the Kinross City Correctional

Facility in Kincheloe, Michigan, filed a *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. In his application, petitioner challenges his

conviction for second-degree murder, Mich. Comp. Laws § 750.317. For the

reasons stated below, the petition for a writ of habeas corpus is **DENIED WITH**

**PREJUDICE.**

## I.      Background

       Petitioner was convicted following a jury trial in the Wayne County Circuit

Court. This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28

1

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's conviction involves the stabbing death of William Fish on May 18, 2009, in Detroit. The prosecution alleged that defendant stabbed Fish in anger over an earlier fight that had occurred between defendant and an individual named Cameron, and in which Fish was also involved. Defendant maintained that Fish assaulted him with a knife and that he stabbed Fish in self-defense during a struggle for that knife. At trial, two men who were present with Fish during the stabbing, Benjamin Tucker and Patrick Mayo, provided their versions of the incident, as did defendant. In addition, all three men testified about the earlier fight, as did a fourth witness, Johnny McDaniel.

*People v. McGhee*, No. 295708, 2011 WL 566844, at *1 (Mich. Ct. App. Feb. 17, 2011).

The Court also recites these additional facts. The medical examiner testified that the cause of death was multiple stab wounds, finding that "[T]here were three stab wounds, one on the right chest, one on the left chest and one on the left arm." (ECF No. 6-9 at Pg ID 452.) The stab wound labeled "number one," located on the right upper chest, proceeded through the spaces between the ribs and perforated the lower part of the right lung. (*Id.*) Stab wound "number two," located on the left lower chest, went through the tissues beneath the ribs and tore the tissue that envelopes the heart, the pericardium. (*Id.*) This wound also ripped the right side of the heart and the middle portion of the heart. (*Id.* at Pg ID 452-53.) The combination of the piercing of the right lung and heart caused "extensive bleeding into the chest cavity," according to the medical examiner. (*Id.* at Pg ID 453.) Stab wound "number three," located on the lateral portion of the left arm, slashed

through the skin and the soft tissues beneath the skin as well as the muscle beneath the soft tissue. (*Id.*). The first injury was a downward motion, and the second injury was an upward motion. (*Id.* at Pg ID 465.) Although the medical examiner could not definitively state that Fish's left arm injury constituted a defensive wound, he did say that the injury to the left arm might be a defensive wound. (*Id.* at Pg ID 466.)

Petitioner testified that the victim (Fish) "pulled out a knife." (ECF No. 6-11 at Pg ID 837.) Petitioner further testified that Fish cut petitioner's right arm with the knife, which caused him to bleed. (*Id.* at Pg ID 838-39.) A struggle then ensued, according to petitioner, in which he grabbed Fish's hand. (*Id.* at Pg ID 839.) Breaking free, petitioner testified that he ran away. Petitioner claimed he had no reason to harm Fish and denied intentionally stabbing him repeated times that night. (*Id.* at Pg ID 841.)

Petitioner's conviction was affirmed on appeal. *People v. McGhee*, No. 295708, 2011 WL 566844; *lv. den.* 490 Mich. 896, 804 N.W. 2d 555 (2011). Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. McGhee*, No. 09-017549-FC (Third Cir. Ct., Dec. 3, 2012). The Michigan appellate courts denied petitioner leave to appeal. *People v. McGhee*, No. 316330 (Mich. Ct. App. Oct. 25, 2013); *lv. den.* 495 Mich. 993, 845 N.W. 2d 117 (2014); *reconsideration den.* 497 Mich. 857, 852 N.W. 2d 160 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.     The state court unlawfully deprived the Petitioner of his due process, equal protection, and other protected rights under the United States and Michigan Constitutions when it responded to the jury's request to review key testimony by indicating that it would take substantial time to prepare a transcript and asked the jury to rely on its collective memories, thus forcing a coerced verdict.

II.     Petitioner was denied his right to counsel of choice, by his trial judge, in violation of his Sixth Amendment, thus, a structural error was committed against him, which requires automatic reversal.

III.     Mr. McGhee was denied his constitutional right to a fair and impartial jury, by the trial court not holding a hearing pursuant to *Remmer v. United States*, 347 Us 227, 320; 74 S.Ct. 450; 98 L. Ed 2d 654 (1954), where after opening statements were given, juror 9 seen [*sic*] the victim's family and knew one of them, because they worked at Ford Motor Company together, and, at least one other juror worked at the same Ford plant, yet, no inquiry was undertaken to protect Mr. McGhee's rights and counsel was ineffective in failing to completely preserve this issue.

IV.     Substantial prosecutorial misconduct deprived Petitioner of his rights to a fair trial pursuant to Us [*sic*] Constitutional Amend V, XIV, Mich. Const. 1963, Art. 1, § 17 and 20.

V.     Petitioner was denied his Fifth Amendment constitutional rights to a fair and impartial trial where the trial court abused its discretion in allowing in prejudicial evidence that went to the conclusion of law for the trier of fact to determine[.]

VI.     Petitioner was denied his constitutional right to the effective assistance of appellate counsel on his appeal of right. U.S. Const. Am. VI, XIV.

VII.     The state courts erred and violate[d] Petitioner's right to a fair trial, and due process of law regarding ineffective assistance of counsel without holding an evidentiary hearing to assess counsel's performance as identified in the above issues, and prejudice suffered.

U.S. Const. Amend. V, XIV; Mich. Const. 1963, Art 1, §17, 20.

## II.     Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in
> > the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when

a state court decision "unreasonably applies the law of [the Supreme Court] to the

facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

5

incorrectly." *Id.* at 410-11.

The Supreme Court explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of

6

his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. Discussion

### A. Procedural Default

Respondent claims that petitioner's first through fifth claims are procedurally defaulted for various reasons. This Court notes that procedural default is not a jurisdictional bar to the review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Respondent alleges that petitioner's first claim is waived, having failed to object to preserve the error during trial. Respondent further alleges that the

second through fifth claims are procedurally defaulted because petitioner raised

them for the first time in his post-conviction motion for relief from judgment and

failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing

to raise these claims on his appeal of right.

The Michigan Court of Appeals and the Michigan Supreme Court rejected

petitioner's post-conviction appeal on the ground that "the defendant has failed to

meet the burden of establishing entitlement to relief under MCR 6.508(D),"

without referring to subsection (D)(3) or mentioning petitioner's failure to raise

these claims on his direct appeal as their rationale for rejecting his post-conviction

claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous

as to whether they refer to procedural default or a denial of post-conviction relief

on the merits, the orders are unexplained.  *See Guilmette v. Howes*, 624 F. 3d 286,

291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state

court opinion to determine the basis for the state court's rejection" of petitioner's

claims.  *Id.* Although the trial judge mentioned M.C.R. 6.508(D)(3) in her

opinion, she did not specifically invoke the court rule nor mention petitioner's

failure to raise the claims on his direct appeal as the basis for rejecting these

claims.  Because the last reasoned state court decision appears to have rejected the

petitioner's claims on the merits, this Court concludes that these claims are most

likely not procedurally defaulted.  *Guilmette*, 624 F. 3d at 292.  In addition,

petitioner's first claim is non-cognizable.  The Court believes that judicial economy is served by addressing the merits of these claims.

## B.  Claim 1 – Failure to Read Testimony

Petitioner contends that the trial court judge deprived him of his due process rights when she responded to the jury's request to review witness testimony by stating that it would take substantial time to prepare a transcript and then told the jury to rely on their collective memories.

There is no federal constitutional law which requires that a jury be provided with a witness' testimony. *See Bradley v. Birkett,* 192 Fed. App'x. 468, 477 (6th Cir. 2006).  The reason for this is that there is no U.S. Supreme Court decision that requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request.  *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001).  A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding.  *Bradley,* 192 Fed. App'x. at 477; *Spalla v. Foltz,* 615 F. Supp. 224, 233-34 (E.D. Mich. 1985).  Given the lack of holdings by the Supreme Court on the issue of whether a state trial judge is required to re-read the testimony of witnesses or provide transcripts of their testimony to jurors upon their request, the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established

federal law. *See, e.g., Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

### C. Claim 2 – Choice of Counsel

Petitioner contends that the trial court erred in denying his motion for an adjournment so that he could retain new counsel after expressing dissatisfaction with his appointed counsel on the morning of trial. The trial court rejected petitioner's claim in his motion for relief from judgment as follows:

> On the morning of his trial the defendant told the court that his family had hired a new attorney for him and he did not want to proceed with his court appointed attorney. The court questioned the defendant about his reasons for changing attorneys at that late moment. The defendant complained that his appointed attorney did not file a motion that he asked her to file, she told him negative things about his case, she argued with his mother and she called him stupid. The court pointed out that the attorney he wished to go to trial with had not properly filed an appearance with the court or notified the court that he would be substituting into the case despite being in the courtroom several times in the previous week, nor was he prepared to go to trial on the scheduled date. The court noted that the assigned attorney was prepared to go to trial, she had appeared at every pretrial matter without the defendant complaining and that she was not required to file motions that had no merit. It was also noted that this was the second trial date for the defendant because he had fired his first attorney on the date of his trial and was then appointed a new attorney. The prosecutor had several witnesses subpoenaed for this trial date, including an expert witness, and was prepared to proceed to trial. The court denied the defendant's request to adjourn his trial but allowed the retained attorney to sit as co-counsel through the entire trial. The retained attorney declined to do so.

*People v. McGhee*, No. 09-017549-FC, * 3-4 (Third Cir. Ct., Dec. 3, 2012).

The Sixth Amendment right to the assistance of counsel does not guarantee a

criminal defendant that he or she will be represented by a particular attorney.

*Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing

*Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal

defendant who has the desire and the financial means to retain his or her own

counsel "should be afforded a fair opportunity to secure counsel of his own

choice." *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he

Sixth Amendment guarantees the defendant the right to be represented by an

otherwise qualified attorney whom that defendant can afford to hire, or who is

willing to represent the defendant even though he is without funds." *U.S. v.*

*Gonzalez-Lopez,* 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale,* 491 U.S.

at 624-25). However, while a criminal defendant who can afford his or her own

attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4

F.3d at 1348 (citing *Wheat v. United States,* 486 U.S. 153, 159 (1988)). The right

to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F.2d

275, 280 (6th Cir. 1985). "Although a criminal defendant is entitled to a

reasonable opportunity to obtain counsel of his choice, the exercise of this right

must be balanced against the court's authority to control its docket." *Lockett v.*

*Arn,* 740 F.2d 407, 413 (6th Cir. 1984); *see also Gonzalez-Lopez,* 548 U.S. at 151-

52 ("Nothing we have said today casts any doubt or places any qualification upon

our previous holdings that limit the right to counsel of choice and recognize the

authority of trial courts to establish criteria for admitting lawyers to argue before them....We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.") (internal citations omitted). Furthermore, the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 132 S. Ct. 1276, 1287 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.*

This Court first notes that petitioner's request for a continuance to obtain new counsel was untimely because it was made on the day of trial. Petitioner offered no reasons to the state courts or to this Court why he did not bring his dissatisfaction with his counsel up to the trial court earlier. The Sixth Circuit has noted that when "the granting of the defendant's request [for a continuance to obtain new counsel] would almost certainly necessitate a last-minute continuance,

the trial judge's actions are entitled to extraordinary deference." *U.S. v. Whitfield*, 259 Fed. App'x. 830, 834 (6th Cir. 2008) (quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir.1995)); *see also United States v. Reevey,* 364 F.3d 151, 157 (4th Cir. 2004) ("a continuance request for the substitution of counsel made on the first day of trial is clearly 'untimely under all but the most exigent circumstances.'"). The Sixth Circuit has rejected similar requests as being untimely. *See U.S. v. Trujillo,* 376 F.3d 593, 606-07 (6th Cir. 2004) (finding motion for substitution of counsel untimely, coming only three days prior to the start of the trial); *United States v. Jennings,* 83 F.3d 145, 148 (6th Cir. 1996) (finding motion to continue to obtain new counsel untimely when it was made the day before trial). Petitioner was previously granted a continuance when he fired his first retained counsel and requested court appointed counsel. Petitioner's request for a continuance to obtain new retained counsel on the day of trial was untimely, particularly when petitioner had several opportunities prior to trial to bring his dissatisfaction with counsel to the attention of the trial court. *Whitfield,* 259 Fed. App'x. at 834.

Moreover, in rejecting petitioner's motion, the trial court judge seemed to imply that petitioner was requesting the adjournment to stall the trial, because she noted that this was the second trial date for petitioner, after petitioner fired his first attorney on the first scheduled date of his trial, at which point, the judge appointed

a second attorney. Although petitioner alleges that he was denied his right to proceed to trial with new retained counsel, the record clearly reflects that retained counsel first filed an unsigned, undated appearance the morning of trial and that retained counsel was unprepared and unavailable for trial that day. (ECF No. 6-9 at Pg ID 280-83.) To the contrary, petitioner's appointed counsel was prepared to proceed to trial. Also, the trial court agreed to allow new retained counsel to act as co-counsel, which was declined. (*Id.* at Pg ID 284.)

Following the court's ruling, petitioner asked, "So I am still going to trial?" (*Id.*) Petitioner then went on a tirade that resulted in his removal from the courtroom and return to jail; surprised that the court could proceed without him, petitioner asked "How you gon' have it without me?" (*Id.* at Pg ID 284-88.) A defendant's right to counsel of choice may not be used to unreasonably delay a trial. *Linton,* 656 F. 2d at 209. As a result, petitioner is not entitled to habeas relief on his second claim, because the state courts' decisions to refuse to permit petitioner to substitute counsel were not contrary to clearly established federal law as decided by the United States Supreme Court. *See Ray v. Curtis*, 21 Fed. App'x. 333, 335 (6th Cir. 2001).

### C.  Claim 3 – Right to a Fair and Impartial Jury

Petitioner alleges that he was entitled to a *Remmer* hearing to determine if any of the other jurors were prejudiced by a statement made by Juror #9 that he

knew one of the family members of the victim from working together at Ford Motor Company. Petitioner also claims that Juror #11, who was also a Ford Motor employee, should have been questioned by the court to determine whether this juror knew the victim's family member and whether this juror could be fair and impartial.

In *Remmer v. United States*, 347 U.S. 227, 230 (1954), the Supreme Court held that a trial court confronted with an allegation of external tampering or contact with a juror during a trial about a matter pending before the jury "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." However, a *Remmer* hearing is not required unless the defendant can show that the unauthorized juror contact "created actual juror bias." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997).

To be entitled to a *Remmer* hearing, a defendant "must do more than simply raise the possibility of bias." *Jackson v. Bradshaw*, 681 F.3d 753, 766 (6th Cir. 2012). A defendant "must make a colorable claim of extraneous influence," that is, "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Id.* "Examples of extraneous influences include 'prior business dealings with the defendant, applying to work for the local district attorney, conducting an [out-of-court] experiment, and discussing the trial with an

employee.'" *Id.* (internal quotation omitted). A trial court "should consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source when determining whether a hearing is required." *Kowalak v. Scutt*, 712 F.Supp.2d 657, 692 (E.D. Mich. 2010) (quoting *Sims v. Rowland*, 414 F.3d 1148, 1155 (9th Cir. 2005) (internal quotation omitted). To be entitled to a post-trial hearing on an extraneous influence claim, a defendant must "come[ ] forward with clear, strong, substantial and incontrovertible evidence that a specific, non-speculative impropriety has occurred." *Id*. (internal quotation omitted).

Moreover, "[s]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion." *United States v. Rigsby,* 45 F.3d 120, 125 (6th Cir. 1995) (quoting *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985)). In a habeas corpus case, a state court's findings on whether, and how, an extraneous matter affected jury deliberations "deserve[ ] a 'high measure of deference.'" *Mahoney v. Vondergritt,* 938 F.2d 1490, 1492(1st Cir. 1991) (quoting *Rushen v. Spain*, 464 U.S. 114, 120 (1983)).

Petitioner is not entitled to habeas relief on his right to a fair and impartial jury claim because he never presented evidence of any jury impropriety. The trial

court judge excused Juror # 9, who knew a member of the victim's family. (ECF No. 6-9 at Pg ID 442-44.) Juror #11 retired from Ford Motor Company five years earlier and did not indicate that he knew the family members of the victim. (*Id.* at Pg ID 303-04.) There is no record evidence that Juror # 11 and Juror # 9 knew each other and merely working for the same company would not be indicative of bias against petitioner. In light of the fact that Juror # 9 had been removed from the jury, petitioner is not entitled to habeas relief because there is no evidence that Juror # 9 discussed his acquaintance with the victim's family with the other jurors or that Juror # 11 knew any of the victim's family members. *See e.g. Young v. Trombley,* 435 Fed. App'x. 499, 505-06 (6th Cir. 2011) (holding that state court's determination that petitioner was not deprived of his Sixth Amendment right to an impartial jury was not an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, where the record contained no evidence or other indication that any member of the jury was influenced by the fact that a dismissed juror might have previously known one of the victims). Because petitioner's extraneous influence claim is conclusory and unsupported, he is not entitled to habeas relief on his third claim. *Kowalak,* 712 F. Supp. 2d at 692-93. Furthermore, trial counsel was not ineffective for failing to have a hearing on a conclusory and unsupported claim.

### D. Claim 4 – Prosecutorial Misconduct

Petitioner claims that he was denied a fair trial because of prosecutorial misconduct. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Harrington*, 562 U.S. at 103).

#### 1. Shifting the Burden

Petitioner alleges that the prosecutor shifted the burden by injecting prejudicial information through the testimony of her witness, Mr. Tucker,

specifically eliciting testimony from this witness that petitioner murdered the victim. Petitioner claims that this testimony was prejudicial because it required the witness to reach a conclusion of law which should have been left for the jury. The prosecutor asked her witness if he recognized anyone from the photo lineup and what he told the police. The witness indicated that he identified petitioner and that he told the police that he witnessed petitioner murdering Will. (ECF No. 6-10 at Pg ID 652-60.) At the preliminary examination, this witness was asked what he saw at the time of the incident. (*Id.* at Pg ID 642.) The objection pertained to the witness' conclusion that he saw petitioner murdering Will. (*Id.* at Pg ID 660.) At trial, the witness testified to what he told the police. The witness indicated how he identified petitioner's photo to the police. (*Id.*) He identified petitioner as the person who murdered the victim based on what he observed. (*Id.*)

The question posed by the prosecutor was relevant to establishing the witness' identification of petitioner. A prosecutor does not commit misconduct by asking witnesses relevant questions. *See Slagle v. Bagley*, 457 F.3d 501, 518 (6th Cir. 2006). Another judge in this district has rejected a similar claim involving similar questions and comments. *See Fuller v. Lafler,* 826 F. Supp. 2d 1040, 1059 (E.D. Mich. 2011)(finding that prosecutor's characterization of expert medical witness called by defendant in child sexual abuse case as "hired gun" was not so inflammatory that it affected fairness of trial so as to rise to level of a due process

violation). A single comment made by a witness while testifying in connection with his identification of petitioner did not render petitioner's trial fundamentally unfair when the trial lasted four days and contained testimony from numerous witnesses. Although petitioner alleges that this single comment could have biased the jury, the burden is on petitioner to show actual bias where there are claims of juror bias. *See Phillips v. Bradshaw,* 607 F3d 199, 223 (6th Cir. 2010). Petitioner was not denied his right to a fair trial as a result of the prosecutor's question.

## 2. Pretrial Silence

Petitioner alleges that the prosecutor committed misconduct by repeatedly commenting on petitioner remaining silent following the assault, in violation of his right to remain silent.

The Supreme Court has held that prosecutors may use a defendant's pre-arrest silence as substantive evidence of his guilt so long as the defendant did not expressly invoke his right to remain silent. *Salinas v. Texas*, 133 S. Ct. 2174, 2179, 2184 (2013); *see also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014). When viewed in context, the prosecutor's comments referred to petitioner's silence before he had been arrested and before he invoked his right to remain silent. Furthermore, any admission of petitioner's pre-arrest silence in this case would have been harmless error at best, in light of the overwhelming evidence against petitioner. *See United States v. Banks,* 29 Fed. App'x. 276, 284 (6th Cir.

2002).

Petitioner raised his pre-arrest issue in his motion for relief from judgment. The trial court rejected this claim, finding that the prosecutor specifically used petitioner's pre-arrest silence to impeach petitioner's credibility regarding his claim of self-defense. *People v. McGhee,* 09-017549-01-FC, at * 7. Petitioner testified that he was defending himself against the victim's knife assault when he grabbed the knife. Being that he was arrested several days after the incident, the prosecutor's questions about why he failed to contact the police about his claim that he was assaulted by the decedent directly challenged his claim of self-defense.

The Supreme Court has held that use of a defendant's pre-arrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process. *Jenkins v. Anderson*, 447 U.S. 231, 238-39 (1980). Moreover, in the absence of any indication that a criminal defendant had not received his *Miranda* warnings, the use of post-arrest silence to impeach a defendant's credibility when that defendant chooses to take the witness stand does not violate the Due Process Clause. *See Fletcher v. Weir,* 455 U.S. 603, 606-07 (1982). In *Fletcher,* the Supreme Court held that it was not unconstitutional for a prosecutor to use the defendant's post-arrest silence for impeachment purposes where the defendant testified at trial that

he stabbed the victim in self-defense and that the stabbing was accidental. *Id.* Petitioner testified that he stabbed the victim in self-defense. References to petitioner's pre-arrest silence would have been permissible under *Jenkins* to impeach his credibility. When viewed in the overall context, the comments about petitioner's silence appear to have been used by the prosecutor to cast doubt on petitioner's claim of self-defense and not as substantive evidence of petitioner's guilt. *See Seymour v. Walker,* 224 F.3d 542, 560 (6th Cir. 2000). Therefore, Petitioner's claim is meritless.

### 3. Closing Argument

Petitioner claims that the prosecutor injected facts into her closing argument that were not presented at trial when she stated that petitioner's cousin was seen earlier that day with what might have been the murder weapon.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (quoting Donnelly, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

There was record support for the prosecutor's argument. Patrick Mayo testified that he saw "Don P" with a five-inch hunting knife. (ECF No. 6-11 at Pg ID 726-27.) Veronica Hicks confirmed that Don P. was petitioner's cousin Kevin, who drove petitioner to the murder scene that night. (ECF No. 6-10 at Pg ID 566; 569; 591.) Mayo also testified that he saw something white in petitioner's hands after petitioner stabbed Fish, and that following the stabbing, petitioner stood in the middle of the street "talking about how he was a killer, yelling it." (ECF No. 6-11 at Pg ID 747.)

Petitioner testified that after the victim got out of the car, they argued and the victim pulled out a knife and cut his arm with it. (*Id.* at Pg ID 836.) At that point petitioner grabbed the victim's hand and they tussled over the knife. (*Id.*) Petitioner stated that he was not aware that the victim was injured until he backed away and saw blood on the victim's shirt. Petitioner estimated the struggle over the knife lasted only seconds. (*Id.* at Pg ID 836-39.)

While petitioner claims that no one saw the victim or himself with a knife that night, petitioner's testimony at trial provides a detailed account pertaining to a struggle over a knife. Furthermore, Patrick Mayo testified that he saw petitioner's cousin with a knife, that petitioner's cousin drove petitioner to the scene of the stabbing, and that he saw something in petitioner's hand as petitioner shouted about being a killer following the stabbing. The prosecutor did not improperly

23

interject facts pertaining to the use of a knife. The prosecutor was free to argue reasonable inferences from the evidence which supported a finding that petitioner's cousin was seen with a knife earlier that day at an earlier altercation involving petitioner and Cameron, which was broken up by Fish and that petitioner's cousin drove petitioner to find Fish, resulting in Fish dying from multiple stab wounds. Petitioner's claim is unfounded and without merit.

### 4. Cumulative Misconduct

Petitioner contends that the cumulative effect of the prosecutor's comments and questions deprived him of a fair trial. The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Petitioner's claim that the prosecutor's comments and remarks cumulatively deprived him of a fair trial is an inadequate ground for granting federal habeas relief, because it is essentially a cumulative errors claim. *See e.g. Noel v. Norris,* 194 F. Supp. 2d 893, 931-32 (E.D. Ark. 2002); *aff'd* 322 F. 3d 500 (8th Cir. 2003); *cert. den.* 124 S. Ct. 13 (2003). Petitioner is therefore not entitled to habeas relief on his cumulative error claim.

## V. Claim 5 - Abuse of Discretion

Petitioner alleges that the trial court abused its discretion when it allowed in prejudicial evidence that went to the legal conclusion of petitioner's guilt in the

stabbing.

Mr. Tucker testified that when asked to identify petitioner during a photo lineup, he looked at the picture and then told the officer "[he] Murder[ed] Will." (ECF No. 6-10 at Pg ID 652-60.) The trial court overruled trial counsel's objection finding that the statement was relevant and its probative value substantially outweighed the danger of unfair prejudice.

Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d at 552. In addition, federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The trial court reviewed this claim on petitioner's motion for relief from judgment and found that the comment was not so inflammatory so as to deny petitioner a fair trial. The trial court further found that any effect by the single comment was removed with the instructions to the jury that they were the only determiners of fact. *People v. McGhee*, 09-017549-01-FC, at * 7. This Court sitting on federal habeas review may not second guess the state court's conclusion that it was permissible for Mr. Tucker to offer lay opinion testimony on this issue; thus, petitioner is not entitled to habeas relief on his claim. *See Charles v. Thaler*, 629

F. 3d 494, 500 (5th Cir. 2011).

## VI.  Claims 6 and 7 - Ineffective Assistance of Counsel Claims

The Court will consolidate petitioner's ineffective assistance of counsel claims together for judicial clarity.  In his sixth claim, petitioner alleges that he was denied his constitutional right to the effective assistance of appellate counsel. In his seventh claim, petitioner alleges that he was denied due process when the state courts declined to hold an evidentiary hearing on petitioner's ineffective assistance of counsel claims.

Taking petitioner's seventh claim first, the Court does not have the power to grant habeas relief on petitioner's claim that the state courts failed to conduct an evidentiary hearing on his ineffective assistance of counsel claims.  There is no federal constitutional right to appeal a state court conviction.  *Cleaver v. Bordenkircher*, 634 F. 2d 1010, 1011 (6th Cir. 1980).  Where a habeas petitioner alleges a denial of his or her right to appeal a state criminal conviction, he or she is not entitled to federal habeas relief.  *Tate v. Livesay*, 612 F. Supp. 412, 413 (M.D. Tenn. 1984).  In addition, violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Whether the trial court erred in its application of M.C.R. 7.211 in denying petitioner's motion for an evidentiary hearing on his ineffective assistance of counsel claims is a

question of state law that cannot be reviewed in a federal habeas petition. *See Hayes v. Prelesnik,* 193 Fed. App'x. 577, 584 (6th Cir. 2006). Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. *Id.* at 585. Accordingly, petitioner would not be entitled to habeas relief on his seventh claim.

Even if there is a due process component to petitioner's claims involving the denial of his motion, deprivation of this sort would not form the basis for issuing a writ of habeas corpus, but might support a request for an evidentiary hearing in this Court for the purpose of developing a record on the petitioner's ineffective assistance of counsel claim. *See May v. Renico,* 2002 WL 31748845, * 5 (E.D. Mich. Nov. 12, 2002). This Court must determine whether petitioner is entitled to an evidentiary hearing on his claim.

When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.* If the record refutes

the habeas petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Id.* A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001). A habeas petitioner is also not entitled to an evidentiary hearing on his claims of ineffective assistance of counsel where the petitioner fails to allege specific facts which, if true, would entitle him to relief on his claims. *See Barber v. Birkett,* 276 F. Supp. 2d 700, 706 (E.D. Mich. 2003) (petitioner was not entitled to an evidentiary hearing on his claims that he was denied his right to counsel and that his appellate counsel rendered ineffective assistance, where he did not assert any facts which, if true, would establish a constitutional error). As will be discussed below, petitioner's ineffective assistance of counsel claim is without merit, therefore, he is not entitled to an evidentiary hearing on this claim.

In his sixth claim, petitioner alleges that appellate counsel was ineffective by not holding an evidentiary hearing to ascertain if Juror # 9 biased the jury by indicating that he knew a member of the victim's family. Petitioner further alleges that appellate counsel was ineffective by failing to ask for an evidentiary hearing to assess trial counsel's performance in failing to request a *Remmer* hearing, pursuant to *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973) and M.C.R. 7.211(C)(1).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong*

*v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

The trial court judge found that there was no merit to petitioner's claim that a juror's knowledge of a member of the victim's family could possibly taint another member of the jury. Although Juror # 9 and Juror #11 were employed by Ford Motor Company, the trial court found that petitioner's complaint was based on mere speculation that Juror # 11 knew any of the witnesses or family members, or that Juror # 11 was biased because he worked for the same company as Juror # 9 and would be biased because Juror # 9 recognized one of the victim's family members. In fact, Juror # 11 retired from Ford Motor Company five years earlier and did not say he knew any of the witnesses or victim's relatives. *People v. McGhee*, 09-017549-01-FC, at * 4-6.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Petitioner's claim lacks merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v.*

*Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because this claim cannot be shown to be meritorious, appellate counsel was not ineffective in the handling of petitioner's direct appeal.  Therefore, Petitioner is not entitled to habeas relief on his sixth or seventh claims.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a

certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. Conclusion

Accordingly,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED WITH PREJUDICE;**

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED;**

**IT IS FURTHER ORDERED** that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 18, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 18, 2017, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager